IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **ELIZABETH BROWN** § | |
| **Plaintiff,** § | |
| § | |
| vs. § | **CIVIL ACTION NO.** |
| § | |
| **LUXURBAN HOTELS INC.** § | |
| **Serve Registered Agent:** § | |
| CHATMON, JIMMIE | |
| 2125 BISCAYNE BLVD | |
| #253 | |
| MIAMI, FL 33137 | |
| | |
| **Defendant.** | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE U.S. DISTRICT JUDGE:

COMES NOW, the Plaintiff, Elizabeth Brown, and she files the following for her Complaint against the Defendant, LuxUrban Hotels, Inc. ("LuxUrban" or "Defendant") for breach of a settlement agreement, and alleges as follows:

### I. INTRODUCTION

This is an action for breach of contract for failure to comply with the Parties' settlement agreement, a copy of which is attached as Exhibit A.

### II. JURISDICTION AND VENUE

1. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states and pursuant to the agreement between the parties.

2. Venue is proper pursuant to the forum selection clause within the settlement agreement, which designates the courts of Virginia as the agreed-upon jurisdiction for any legal proceedings related to the agreement.

### III. PARTIES

3. Plaintiff Elizabeth Brown is a resident of Maryland and previously performed work in an executive capacity for LuxUrban Hotels, Inc.

4. Defendant is a publicly traded corporation organized under Delaware law and headquartered in Miami, Florida.

5. LuxUrban Hotels Inc. can be served through its Registered Agent, Jimmie Chatmon, 2125 Biscayne Blvd, #253, in Miami, Florida 33137.

### III. FACTUAL ALLEGATIONS

6. LuxUrban Hotels Inc. (formerly known as Corp Housing Group) employed Brown from the summer of 2019 until she was terminated on November 4, 2022.

7. LuxUrban Hotels, which was formerly known as CorpHousing Group, was founded in 2017 as a premier provider of short and long-term accommodation services.

8. Founded in 2017, LuxUrban Hotels utilizes a long-term lease, asset-light business model to acquire and manage a growing portfolio of short-term rental properties in major metropolitan cities.

9. LuxUrban Hotels is a consumer brand that serves guests across major metropolitan cities in the United States. LuxUrban uses technology to identify, acquire, manage, and market hotel rooms to business and vacation travelers.

10. Ms. Brown's first title was Assistant Operations Manager. She then became the Human Resources Manager, then the Vice President of Service Support, after which she was

promoted to the Director of Operations. At the time of her termination, Ms. Brown was a member of LuxUrban's Executive Committee.

11. After her termination, through counsel, Ms. Brown contacted LuxUrban regarding various claims she had related to her work as Director of Operations at LuxUrban. Thereafter, the Parties engaged in settlement negotiations through counsel.

12. On May 16, 2023, the parties finalized an agreed settlement, which both Brown and LuxUrban signed (the "Agreement").

13. Both parties were represented by counsel. Brown signed the Agreement on May 17, 2023, and LuxUrban signed the Agreement on May 23, 2023. Brian Ferdinand, the Chief Executive Officer for LuxUrban signed the Agreement on behalf of LuxUrban.

14. Pursuant to the Agreement, which included a mutual release of claims, LuxUrban was to provide compensation to Brown as follows:

LUXURBAN agreed to pay to BROWN the following:

a. <u>Alleged Compensatory Damages</u>. A check made payable to "ELIZABETH BROWN" in the amount of two thousand two hundred and 00/100 Dollars ($2,200.00) as alleged compensatory damages, for which a 1099-MISC Form will be issued to ELIZABETH BROWN;
and

b. <u>Restricted Stock Units ("RSU").</u> Fifty thousand (50,000) Restricted Stock Units of LUXBURBAN stock as alleged compensatory damages, for which a 1099-MISC Form will be issued to ELIZABETH BROWN. The Restricted Stock Units will be immediately vested upon transfer to BROWN.; and

c. <u>Attorneys' Fees and Costs</u>. A check payable to "ZIPIN, AMSTER & GREENBERG, LLC" in the amount of ninety-seven thousand eight hundred and 00/100 Dollars ($97,800.00), as attorneys' fees and costs, for which a 1099-MISC Form will be issued to the law firm.

15. Further, the Agreement stated:

>Payment will be made within thirty (30) days of the Effective Date of this Agreement, as defined in Paragraph 14 below, provided, however, that in no event shall payment be made prior to receipt by counsel of LUXURBAN of the original of this Agreement, signed by BROWN.

16. Pursuant to the Agreement, the effective date was May 24, 2023, and as such, payment was due on or before June 23, 2013. At the time of this filing, the only payment made by LuxUrban was $2,200 in compensatory damages to Brown.

17. LuxUrban operates as a publicly traded company, with its common stock shares available for trade on the Nasdaq Capital Market. In conjunction with its public offering, LuxUrban preserved the right to issue further shares for certain objectives, notably including executive compensation. These additional shares are designated as "Restricted Shares" or "Restricted Stock Units."

18. Initially, LuxUrban took the position that Brown is required to pay $50,000 to LuxUrban for RSUs that cannot be sold for a six-month period. Alternatively, she could accept 50,000 stock options with a strike price of $3.05. LuxUrban's explanation for the demanded payment of $50,000 was for taxes, despite the agreement's stipulation that each side would be responsible for their own taxes.

19. LuxUrban's initial requirement that Brown pay taxes was made after the deadline to issue shares of stock in her name had passed.

20. LuxUrban's failure to make payment, combined with its insistence that Brown provide LuxUrban with a $50,000 payment to initiate the issuance of shares to her, is unsupported and directly contradicts the terms of the Agreement. This represented a material breach of the Agreement.

21. Further proof of this breach is that LuxUrban alternatively "offered" Brown the choice to accept options that currently hold no value. While investments inherently involve risks, the options offered are particularly speculative and currently worthless.

22. The stock options possess minimal to zero value, since Brown could readily purchase 50,000 shares for $3.05 each on the open market, which is precisely what the options permit her to do.

23. On or about July 21, 2023, and after discussions between the parties, LuxUrban agreed to issue stock to Brown without requiring a payment of $50,000.

24. As of the date of the filing of this Complaint, no confirmation that stock has been issued to Elizabeth Brown has been received, despite multiple requests.

25. LuxUrban has also failed to make payment to Zipin, Amster, & Greenberg under the stipulated terms of the Agreement. LuxUrban was obligated to pay attorney's fees and costs directly to Zipin, Amster, & Greenberg LLC. Specifically, a check amounting to ninety-seven thousand eight hundred dollars ($97,800.00) was to be made payable to "ZIPIN, AMSTER & GREENBERG, LLC". In addition, LuxUrban agreed to pay an additional $2500 for a total of one hundred thousand and three hundred dollars ($100,300.00) for an extension of time to pay until August 4, 2023. This amount represents the agreed-upon attorneys' fees and costs, for which a 1099-MISC Form would be issued to the law firm.

26. LuxUrban, without any legal basis, has failed to fulfill its obligation to provide agreed-upon consideration to Brown, including payment of attorneys' fees. This act constitutes a breach of the Settlement Agreement, contravening both the explicit written terms and the mutual understanding established during the contract negotiations.

27.     Moreover, LuxUrban's demand for Brown to issue a check for "taxes" was unfounded under the Agreement, as the Agreement stipulated each party is responsible for their own taxes:

> 3. Taxes. Each entity making a payment under this Agreement, and each recipient of a payment under this Agreement, will be responsible for all taxes that he/she is legally responsible for paying as a result of this Agreement. BROWN agrees that she will not assert, file, or make any claims against LUXURBAN for any portions of such taxes, penalties, or interest she may be compelled to pay and the costs, including attorneys' fees, which she may have to pay in connection with any disputes between her and the Internal Revenue Service or other taxing authority.

28.     While LuxUrban did rescind this requirement, LuxUrban has still failed to issue the required compensation to Brown.

29.     Owing to LuxUrban's non-compliance with the agreed terms, Brown seeks specific enforcement of the Agreement and damages. Given that she could have potentially sold 50,000 shares at $3.19 each, she is seeking compensation in cash equivalent to the value of those shares as well as any other monetary or consequential damages she has incurred.

30.     It is possible that the shares could further increase in value, which would increase Brown's damages because she has been deprived of the opportunity to sell the stock at the time of her choosing.

31.     In the alternative, Brown seeks specific performance and the transfer or issuance of 50,000 shares of stock as well as monetary damages due to the delay in transferring the securities.

32.     Brown requests that LuxUrban be ordered to deposit a sum of $159,500 (representing the potential sale value of the 50,000 shares at $3.19 a share) plus the $100,300.00 in fees into a court registry, for a total of $259,800 thereby ensuring her financial interest in the dispute is safeguarded.

33. Furthermore, Brown seeks reimbursement for additional attorney's fees incurred due to LuxUrban's breach of the Agreement, and as provided under the terms of the Agreement or applicable law, and any other damages or other relief to which she is legally entitled.

## COUNT I—BREACH OF CONTRACT

34. Brown incorporates all paragraphs above.

35. The Settlement Agreement between the Parties is a binding contract.

36. Under the Agreement, LuxUrban was to provide compensation to Brown.

37. LuxUrban failed to pay all consideration owed, which is a material breach of the Settlement Agreement.

38. Based on the allegations above, LuxUrban violated its obligations under the Agreement.

39. As a direct and proximate cause of LuxUrban's actions, Brown has been damaged.

40. Further, due to the nature of securities, time was of the essence, and Brown has been deprived of the opportunity to sell the stock at her discretion, which was trading for up to $3.19 per share in late June and early July. Should the stock price increase prior to her receiving payment, Brown should be entitled to adjust her damages accordingly.

41. In the alternative, while Brown maintains that time was of the essence due to the volatile nature of securities and she is entitled to damages representing the maximum cash equivalent value of the stock after the date of LuxUrban's breach, she requests in the alternative that LuxUrban be required to issue shares of stock to her not subject any minimum holding period and that LuxUrban should additionally be required to pay Brown consequential and compensatory damages for its failure to abide by the settlement agreement.

42. Brown is entitled to a judgment in her favor that LuxUrban is in breach of the agreement and to specific performance, compensatory damages, and attorneys 'fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment, respectfully requesting that the Court:

a) Enter an injunction enjoining LuxUrban from violating the terms of the Settlement Agreement;

b) Specific performance of the contract;

c) Award of consequential damages for losses and lost opportunities as a direct result of LuxUrban's breach;

d) Award pre-judgment and post-judgment interest;

e) Award of hourly attorneys 'fees for enforcement of the Agreement.

f) Any other relief to which Plaintiff is entitled.

DATE: 8/14/2023

/s/ Gregg C. Greenberg
Gregg C. Greenberg, Bar ID 79610
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: 301-587-9373
Email: ggreenberg@zagfirm.com

**ATTORNEY FOR PLAINTIFF**